# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| MILLIE PELLETIER, )<br>)<br>    Plaintiff, )<br>)<br>    v. )<br>)<br>MEGAN BRENNAN, )<br>Postmaster General, and )<br>UNITED STATES POSTAL SERVICE, )<br>)<br>    Defendants. ) | 2:18-cv-00194-JDL |

## ORDER ON DEFENDANTS' MOTION FOR
## PARTIAL JUDGMENT ON THE PLEADINGS

The Defendants, Postmaster General Megan Brennan and the United States Postal Service, move for a partial judgment on the pleadings as to five of the claims asserted in Plaintiff Millie Pelletier's complaint.[1] The complaint includes eight counts, several of which assert multiple claims. The Defendants specifically challenge Pelletier's claims for failure to accommodate under the Rehabilitation Act, (Count 1 ¶ 329); national origin discrimination under Title VII (Count 4); age discrimination under the Age Discrimination in Employment Act (ADEA) (Count 5); violation of the Notification and Federal Employee Antidiscrimination and Retaliation Act (NO FEAR Act) (Compl. ¶ 341); and violation of the Privacy Act (Compl. ¶ 307). I grant the motion for partial judgment on the pleadings with respect

---

[1] The Defendants originally sought complete judgment on the pleadings, but later withdrew that request and now pursue a partial judgment on the pleadings only as to some of Pelletier's claims. *See* ECF No. 10 at 10-12; ECF No. 22 at 2 n.2.

to the age discrimination claim (Count 5) and deny the motion as to all other challenged claims.

The motion (ECF No. 10) also asserts that the United States Postal Service is misjoined as a party-defendant under Fed. R. Civ. P. 21 because Pelletier's federal employment discrimination claims lie exclusively against the Postmaster General, Megan Brennan, in her official capacity.[2] Pelletier concedes that the Postmaster General is the only proper defendant. I therefore dismiss the United States Postal Service as a defendant.

## I. FACTUAL BACKGROUND

A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is "treated in much the same way" as a motion to dismiss under Rule 12(b)(6). *Kando v. R.I. State Bd. of Elections*, 880 F.3d 53, 58 (1st Cir. 2018). Therefore, I treat the following facts alleged in the complaint as true for purposes of the motion for judgment on the pleadings. *See id.*

Pelletier began working for the United States Postal Service ("the Postal Service") as a mail handler in 1986. She has held various positions within the Postal

---

[2] Under Title VII, "the Postmaster General of the United States . . . is the only statutorily appropriate defendant . . . ." *Rys v. U.S. Postal Serv.*, 886 F.2d 443, 444 (1st Cir. 1989) (citing 42 U.S.C.A. § 2000e-16(c) (West 2019)). The same is true for claims under the Rehabilitation Act and ADEA:

> The Rehabilitation Act . . . incorporates the procedural requirements for suits under Title VII, and therefore also requires that the head of the department be the named defendant in any civil action. The ADEA . . . does not specify who the proper defendant should be. Nonetheless, because the ADEA provision applicable to federal employees was patterned after Title VII, courts have similarly held that the proper defendant in a federal employee's ADEA suit is the head of the agency.

*Elhanafy v. Shinseki,* No. 10-CV-3192 (JG)(JMA), 2012 WL 2122178, at *11 (E.D.N.Y. June 12, 2012) (internal citations omitted) (collecting cases); *see also Vázquez-Rivera v. Figueroa*, 759 F.3d 44, 47 (1st Cir. 2014).

2

Service since then, including positions in sales beginning in 1997. Pelletier's current title is International Sales Specialist, level EAS-21, though she has not worked since March 2016, when her medical team advised her that she could no longer work. The complaint alleges that Pelletier sustained several injuries between 1999 and 2016, at least some of which were work-related. The complaint further alleges discrimination in multiple forms, beginning around 2000, and continuing through when Pelletier last worked, in 2016.

A.  **Early Injuries and Alleged Discrimination**

In 1997, Pelletier, who is Franco-American and has French-Canadian ancestry, became the first Postal Service employee to be domiciled abroad when she was given an expatriate assignment in Montreal, Canada. After she successfully completed that year-long detail and returned to the United States, Pelletier developed injuries related to her work, which were diagnosed in 1999 and 2001. Her initial diagnoses included bilateral carpal tunnel, extensor tendinosis with shoulder and neck involvement, and a herniated disc. She underwent several surgeries for those conditions in 2000, 2001, and 2002. The complaint alleges that the Postal Service failed to fully comply with the restrictions that Pelletier's doctors recommended after her surgeries, causing her conditions to worsen.

In 2006, Pelletier relocated from Maine to Washington, D.C., after she was awarded a position as a Global Account Specialist, level EAS-21, with the Postal Service's Inbound Global Business Team. She was the only female member of a five-person sales team. Pelletier worked in Washington, D.C., between 2006 and 2009, during which one of her male coworkers regularly called her "Barbie Doll" in front of

other coworkers. ECF No. 1 ¶ 60. Another coworker called her a "soft woman" and asked her to perform secretarial work for him, though that was not part of Pelletier's job responsibilities. *Id.* ¶¶ 71-72. Pelletier relocated to Virginia for a temporary detail in a level EAS-23 position from 2009 to 2010. Colleagues continued to call her "Barbie Doll." *Id.* ¶ 79.

When Pelletier relocated to Virginia in 2009, the complaint alleges that she was no longer afforded injury accommodations. Pelletier relocated again in 2010, when she returned to Maine and resumed a level EAS-21 position. The position required the same job responsibilities as the level EAS-23 position she had temporarily held in Virginia, but at a lower pay level. The District Sales Manager, Anthony Gibson, secured office space for Pelletier in the Carrier Annex in Saco, rather than at the District Office in Portland. The complaint alleges that the first time that Pelletier met with Gibson, he and another manager commented on Pelletier's "ethnic origin" and told her she was "not really French." *Id.* ¶ 100. The complaint also alleges that Gibson "isolated and targeted female employees," including Pelletier, *id.* ¶¶ 104, 106, 133-34, and treated Pelletier differently than other employees because of her disabilities, *see, e.g., id.* ¶¶ 176-79.

In 2012, Pelletier experienced an exacerbation of her injuries and underwent surgery for nerve impingement of the neck and left shoulder. Pelletier was also diagnosed with a new condition in her left shoulder during the surgery. She was out of work for six months. Before she returned to work, Pelletier provided medical documentation to the Postal Service recommending new restrictions and accommodations. The recommended accommodations included voice activation

software for Pelletier's computer, an adjustable work station, a safer vehicle, an indoor parking space, and an office in Portland.

**B.     Administrative Claims**

Beginning in 2013, Pelletier filed five claims with the Equal Employment Opportunity Commission (EEOC), alleging discriminatory treatment by the Postal Service.

**1.  First EEOC Filing Made in June 2013**

On April 23, 2013, Pelletier experienced pain and aggravated numbness in her neck, shoulder, arms and hands while she was driving in her work vehicle to meet with a customer. She immediately sought medical attention and was given a medical note for two weeks of leave from work. In response, a manager (or managers—the complaint does not specify) informed her that she would need to use her sick leave for the absence. After Pelletier returned to work, Gibson placed his hand on Pelletier's injured shoulder after a meeting and asked her whether it really hurt. These events led Pelletier to initiate the EEOC grievance process for the first time on June 1, 2013, in a filing alleging disability discrimination.[3]

In support of Pelletier's claim of disability discrimination, the informal EEOC complaint alleges that (1) a Postal Service Leave Specialist improperly placed Pelletier on leave without pay status when she was out for medical treatment and also prevented her from buying back leave; (2) there was a delay in the installation

---

[3] The complaint states simply that Pelletier "filed her first . . . EEO" and describes it as an "informal claim." ECF No. 1 ¶ 189. It appears based on the EEOC filings themselves that Pelletier first filed a formal EEOC complaint, *see* ECF No. 9-2 at 2-13, on June 1, 2013, and then filed the required pre-complaint counseling form afterwards, on June 15, 2013, *see id.* at 14-19. It also appears, based on the complaint and the EEOC documents themselves, that the two EEOC filings together were treated as an informal EEOC complaint.

of her voice activation software; (3) her manager provided no assistance with the software issue and instead responded to her medical restrictions with sarcasm; (4) she was isolated in her Saco office with no technology or sales support, unlike similarly situated employees in other states; and (5) she was expected to meet the same goals as employees in higher EAS-level positions who were paid more than she was. Pelletier alleged that these conditions combined to create a hostile work environment.

### 2. Second EEOC Complaint Filed in August 2013

The two-week period during which Pelletier could have filed a formal complaint in her first EEOC case lapsed on July 15, 2013. The following evening, Gibson called Pelletier and told her not to report to work the next day because he had no work available that would accommodate her restrictions. On August 12, 2013, Pelletier filed a new EEOC complaint alleging discrimination on the basis of sex and retaliation for her prior EEOC activity. Later that year, Pelletier settled the retaliation claim with the Postal Service. As part of the settlement, Pelletier agreed to withdraw her claims of "discrimination based on sex (female), physical disability (neck) and . . . retaliation for prior EEO activity," and waive her "rights to any further appeal of [her] complaint through the EEO process." ECF No. 9-4 at 2.

### 3. Third EEOC Complaint Filed in July 2015

In the fall of 2014, the Postal Service posted job announcements for two sales positions, one level EAS-23 and one level EAS-24, with the Global Direct Entry/International Inbound Team. Pelletier applied for both positions and was interviewed. She received the top scores and was deemed the top qualified candidate

for both positions. She was notified on March 13, 2015, however, that she had not been selected for either position. When she asked the selecting official, supervisor Frank Cebello, why she had not been chosen, he told her that he was "being pressured," that no one had been selected from within the Postal Service, and that the jobs would be reposted externally. ECF No. 1 ¶ 245. The complaint alleges that Gibson had sent Cebello emails saying that "if we can't deny [Pelletier] the job due to her injury, we can because she doesn't have a corporate credit card," or that they could "perhaps get her on [her] performance then." *Id.* ¶ 246.

The two positions ultimately were not filled through the external hiring process. Two sales positions were then posted internally again under slightly different job titles, with nearly identical responsibilities and qualifications, and with a Mandarin language requirement. The domicile requirement for each position was also changed, one to California and the other to New York. The complaint does not allege that Pelletier applied for either of the reposted positions.

Pelletier filed a pre-complaint with the EEOC on April 19, 2015, alleging that Cebello had discriminated against her by denying her opportunities for promotion. She alleged that her gender, age, disability, ethnicity, and previous EEOC activity were the basis for that discrimination. Pelletier reiterated those allegations in a formal EEOC complaint, which she filed on July 24, 2015.

### 4. Fourth EEOC Complaint Filed in June 2016

In early 2016, several events transpired that Pelletier alleges were in retaliation for her earlier EEOC activity. First, in mid-February 2016, Pelletier's manager notified her that she had been rated a "non-contributor" for fiscal year 2015,

7

and that she would not be receiving the standard two percent raise that had been distributed in January. Then, on March 1, 2016, Pelletier's manager placed her on a Performance Improvement/Coaching Plan, which is a preliminary step to disciplinary action. Finally, on March 3, Pelletier was informed that she had been scheduled for a Plan and Review with her manager and his superiors. She alleges that when she asked to have an advocate present for the Plan and Review, her manager threatened to issue her a Letter of Warning. Pelletier filed an EEOC complaint based on these allegations on June 8, 2016.

**5. Fifth EEOC Complaint Filed in June 2016**

Also, in mid-2016, Pelletier discovered that Gibson had failed to submit the employer's portion of an injury claim form to the Office of Workers' Compensation Programs (OWCP) back in 2013, after Pelletier had been diagnosed with a new shoulder injury, which had been discovered during her 2012 surgery. Pelletier then filed another EEOC pre-complaint in June 2016, claiming that Gibson's failure to properly file the required paperwork constituted discrimination based on physical disability, gender, and age.

**6. Proceedings Before EEOC Administrative Law Judge**

In late 2016, Pelletier requested a hearing before an EEOC Administrative Law Judge (ALJ) for her July 2015 failure to promote claim. The ALJ granted Pelletier's request to consolidate the July 2015 failure to promote claim with the June 2016 retaliation claim, but denied Pelletier's request to also consolidate her final claim filed in June 2016, which alleged a failure to properly submit documentation to OWCP, with the other two claims. Early in the proceedings, Pelletier had an

opportunity to amend the claims or issues before the ALJ, and Pelletier did so in a filing that sought to clarify the factual bases for her failure to promote and retaliation claims. The ALJ then issued several case management orders, culminating in an order on December 27, 2016, outlining the pending claims. That order identified the pending claims to include only Pelletier's claims for failure to promote and retaliation.

The parties were given the opportunity to engage in discovery beginning on December 28, 2016. On February 9, 2018, after discovery had concluded, the Postal Service moved to dismiss or for summary judgment. Pelletier did not file an opposing motion for summary judgment because she believed that there were genuine disputes as to material facts that made summary judgment inappropriate. The ALJ granted summary judgment in favor of the Postal Service. The order focused solely on the issues outlined in the December 27, 2016 order: the failure to promote and retaliation claims.

## II. LEGAL ANALYSIS

### A. Standard of Review

As stated above, a motion for judgment on the pleadings under Rule 12(c) is analyzed using the same standard as a motion to dismiss under Rule 12(b)(6). *Kando*, 880 F.3d at 58. Therefore, judgment on the pleadings is appropriate if the complaint fails to state a plausible claim for relief. *Doe v. Brown Univ.*, 896 F.3d 127, 130 (1st Cir. 2018). In evaluating the motion, I take the well-pleaded facts in the complaint as true and draw all "reasonable inferences therefrom in the light most favorable to the nonmovant (here, the plaintiff)." *Id.* In the Rule 12(c) context, the well-pleaded facts in the complaint may be supplemented by "facts drawn from documents fairly

incorporated in the pleadings." *Kando*, 880 F.3d at 58. (internal quotation marks omitted). Courts "do not credit . . . legal labels or conclusions, or statements that merely rehash elements of the cause of action." *Lemelson v. Bloomberg L.P.*, 903 F.3d 19, 23 (1st Cir. 2018).

Motions under Rule 12(c) must be carefully evaluated, as "hasty or imprudent use of this summary procedure by the courts violates the policy in favor of ensuring to each litigant a full and fair hearing on the merits of his or her claim or defense." 5C Charles Alan Wright, et al., *Federal Practice & Procedure* § 1368 (3d ed. 2018). Judgment on the pleadings is appropriate "only if the properly considered facts conclusively establish that the movant is entitled to the relief sought." *Kando*, 880 F.3d at 58.

## B. General Timeliness of Events

The Postmaster General first argues that each of the claims asserted in the complaint is generally limited by the EEOC's 45-day limitations period, requiring federal employees to contact the appropriate EEOC Counselor "within 45 days of the date of the matter alleged to be discriminatory[.]" 29 C.F.R. § 1614.105(a)(1) (West 2019). Pelletier contacted an EEOC counselor on April 19, 2015, regarding the claims from which this suit arises. Therefore, the Postmaster General contends that the events that took place more than 45 days earlier—March 5, 2015—should be excluded from the case. Pelletier responds that (1) the continuing violation doctrine permits recovery based on events that took place outside the 45-day window, and (2) even if those events are not actionable, they remain relevant because they provide context for the actionable facts.

The timeliness of events asserted in the complaint is an issue that is not appropriately decided on a motion for judgment on the pleadings under Rule 12(c). The Postmaster General's motion seeks relief in the nature of an in limine order establishing the relevant time period for each claim. However, questions of whether certain events are timely and actionable, the continuing violation doctrine, and relevancy involve mixed questions of law and fact that are more appropriately resolved either at the summary judgment stage, through a motion in limine, or by a jury. Furthermore, even if I did conclude that all of the events that occurred before March 5, 2015, are not timely, the Postmaster General would not be entitled to judgment in her favor on that basis as to any of the eight counts asserted in the complaint. I therefore deny the motion for judgment on the pleadings in this respect.

C.  **Failure to Exhaust Administrative Remedies**

The Postmaster General next argues that Pelletier's failure to accommodate claim (Count 1 ¶ 329) is barred because she failed to assert such a claim in either of the EEOC complaints underlying this suit. Filing an EEOC complaint "does not open the courthouse door to all claims of discrimination." *Velazquez-Ortiz v. Vilsack*, 657 F.3d 64, 71 (1st Cir. 2011). "[T]he scope of a civil action is not determined by the specific language of the charge filed with the agency," however, and it "may encompass acts of discrimination which the [administrative] investigation could reasonably be expected to uncover." *Thornton v. United Parcel Serv., Inc.*, 587 F.3d 27, 31-32 (1st Cir. 2009) (quoting *Davis v. Lucent Techs., Inc.*, 251 F.3d 227, 233 (1st Cir. 2001)). "Simply stated, the scope of the investigation rule permits a district court to look beyond the four corners of the underlying administrative charge to consider

collateral and alternative bases or acts that would have been uncovered in a reasonable investigation." *Id.* at 32.

The two formal EEOC complaints that form the basis for this litigation are Pelletier's July 2015 failure to promote complaint and her June 2016 retaliation complaint. As detailed above, Pelletier's July 2015 failure to promote complaint alleged that she was denied a promotion on the basis of national origin, sex, age, and disability, as well as retaliation for prior EEOC activity. The July 2015 failure to promote complaint does not include any allegations about the Postal Service's failure to accommodate Pelletier's disability, and the only relief requested was a promotion to one of the sales positions that Pelletier had been denied.[4]

The June 2016 EEOC complaint alleged that Pelletier was retaliated against for filing the July 2015 complaint. The June 2016 retaliation complaint includes two allegations that can be construed as referencing a failure to accommodate: (1) that Pelletier was expected to work "12 hour days without an overnight," which risked "further injury," and (2) that Pelletier had been asked to do work while out on leave under the Family and Medical Leave Act (FMLA). ECF No. 9-5 at 2. In addition, the pre-complaint form that Pelletier filed in March of 2016 states that she was "being made to feel uncomfortable, harassed, and threatened" if she asked for time away from work to go to doctor's appointments and that her job expectations put her "at risk of exacerbation of [her] known disability." *Id.* at 4. The investigation that

---

[4] Pelletier also attached, as exhibits to her Opposition to the Motion for Judgment on the Pleadings (ECF No. 15), two forms titled "EEOC Investigative Affidavit" that correspond with the July 2015 and June 2016 EEOC complaints, and which provide further detail about the underlying events. ECF Nos. 15-3, 16-1. Because those documents were submitted after the pleadings were closed, I cannot consider them without treating the motion as one for summary judgment, which I decline to do. Fed. R. Civ. P. 12(d).

resulted from the June 2016 retaliation complaint, therefore, could reasonably be expected to uncover failures by the Postal Service to accommodate Pelletier's disability. Thus, the Postmaster General's assertion that Pelletier failed to exhaust administrative remedies as to her failure to accommodate claim (Count 1 ¶ 329) is unavailing.

### D. Failure to State a Claim

The Postmaster General also asserts that the complaint fails to state a claim for national origin discrimination, age discrimination, violation of the Privacy Act, and violation of the NO FEAR Act.

#### 1. National Origin Discrimination

Title VII requires that "[a]ll personnel actions affecting employees" in the Postal Service "be made free from any discrimination based on . . . national origin." 42 U.S.C.A. § 2000e-16(a) (West 2019). National origin "refers to the country where a person was born, or, more broadly, the country from which his or her ancestors came." *Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 88 (1973), *superseded by statute on other grounds*, 8 U.S.C.A. § 1324b(a)(1)(B) (West 2019). To prevail on a claim of discrimination based on national origin under Title VII, a plaintiff must "show that the motive to discriminate was one of the employer's motives, even if the employer also had other, lawful motives that were causative in the employer's decision." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 343 (2013). But-for causation is not the test. *Id.*

The complaint alleges that Pelletier "was unlawfully discriminated against when she was denied promotion[s] to positions she was qualified for" based on her

French-Canadian national origin. ECF No. 1 ¶ 352. Because that allegation states a legal conclusion, I must disregard it in evaluating the sufficiency of the claim. Pelletier's claim that she was discriminated against based on her national origin is, however, supported by several well-pleaded facts in the complaint: (1) Pelletier was told by Anthony Gibson and another manager that she was "not really French" around the time she relocated to Maine,[5] *id.* ¶ 100; (2) after Pelletier applied for the EAS-23 and 24 inbound sales positions, Gibson emailed the selecting official, supervisor Frank Cebello, suggesting that if they could not deny Pelletier the jobs because of her "injury," they could perhaps justify doing so based on her performance or her lack of a corporate credit card, *id.* ¶ 246; (3) Cebello told Pelletier that the reason she wasn't promoted was that he was being "pressured," *id.* ¶ 245; and (4) after Pelletier was denied the promotion, both inbound sales positions were later reposted internally with a Mandarin language requirement, *id.* ¶ 256. The complaint also alleges that Pelletier was "belittled for her 'accent' and dialect," but does not provide additional information regarding those alleged incidents. *Id.* ¶ 351.

Viewing the allegations in the light most favorable to Pelletier, it is plausible that part of the Postal Service's motive in not promoting her in 2015 was discriminatory animus based on her national origin. The selecting official for the inbound sales positions, Cebello, told Pelletier that the reason she wasn't promoted to either of the positions was that he was being "pressured." *Id.* ¶ 245. It appears that at least some of that pressure came from Gibson, the same manager who made

---

[5] The complaint does not identify a specific date or year when this exchange took place, but it appears that it happened around the time that Pelletier relocated to Maine in 2010.

derogatory remarks to Pelletier about her French-Canadian national origin by telling her that she was "not really French." *Id.* ¶ 100. It is also plausible, as Pelletier claims, that the Mandarin language requirement was added to later job postings specifically to exclude her from eligibility. Under that theory, the addition of the language requirement is itself an adverse employment action based on Pelletier's French-Canadian heritage and French language skills, so the fact that she did not apply for the re-posted positions is not determinative. Therefore, it is plausible that Gibson harbored discriminatory animus towards Pelletier based on her French-Canadian heritage, which played a role in the Postal Service's decisions to not promote her and to add a Mandarin language requirement to the inbound sales positions so as to exclude Pelletier from eligibility.

I therefore conclude that the complaint states a claim for national origin discrimination under Title VII (Count 4).

**2. Age Discrimination**

"The federal sector provision of the ADEA provides that '[a]ll personnel actions affecting employees . . . who are at least 40 years of age . . . in the United States Postal Service . . . shall be made free from any discrimination based on age.'" *Gómez-Pérez v. Potter*, 452 F. App'x 3, 7 (1st Cir. 2011) (quoting 29 U.S.C.A. § 633a(a) (West 2019)).[6] ADEA plaintiffs "must 'establish that age was the "but-for" cause of the employer's adverse action.'" *Vélez v. Thermo King de P.R., Inc.*, 585 F.3d 441, 446 (1st Cir. 2009)

---

[6] In Count 5 of the complaint, Pelletier asserts a claim of age discrimination under the ADEA pursuant to 29 U.S.C.A. § 623(a). As the Postmaster General notes in her motion, *see* ECF No. 10 at 20 n.18, the ADEA provision that governs federal workers is § 633a. *See also Rossiter v. Potter*, 357 F.3d 26, 29 (1st Cir. 2004) (discussing the statutory scheme for federal employees).

(quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009)). The complaint alleges that Pelletier, who is over 40 years old, was discriminated against based on her age because her age was used as a reason not to promote her and not to accommodate her physical conditions. ECF No. 1 ¶¶ 356-57. Again, setting aside legal conclusions asserted in the complaint, I turn to the relevant well-pleaded facts in the complaint.

The complaint alleges only one incident involving comments about Pelletier's age. Sometime in 2015,[7] Pelletier complained to two managers (who are not identified by name) about tactics that some of her male coworkers had been engaging in, including taking credit at meetings for some of Pelletier's sales and ideas. In response, the managers "suggested she must have enough time in the government to retire" and that "if she did not like the way she was being treated she should just leave," and remarked "that she must be getting close to retirement age." *Id.* ¶ 276. Though the complaint alleges that Pelletier's age was used as a reason not to promote her, the complaint does not identify when in 2015 this conversation took place and whether it happened before Pelletier was notified in March of that year that she had not been selected for the sales positions. Even if the comments were made before March, the complaint does not allege that the managers who made the remarks were involved in the hiring process for the sales positions that Pelletier applied for and was denied. The complaint also alleges that Pelletier's age was used as a reason not to accommodate her physical conditions, but again, the complaint draws no

---

[7] The complaint does not state when this exchange occurred. Pelletier argues that it is reasonable to infer that it happened in 2015, since the surrounding paragraphs in the complaint discuss events that took place in 2015. I draw that inference in Pelletier's favor, as I must at this procedural stage.

connection between the managers who made the remarks and Pelletier's prior accommodation requests.

Furthermore, remarks in the workplace about an employee's retirement plans, standing alone, do not generally support a claim for age discrimination. *See Wallace v. O.C. Tanner Recognition Co.*, 299 F.3d 96, 100 (1st Cir. 2002) ("None of the inquiries from [the plaintiff's direct superiors] about his retirement plans had significant probative value; they were brief, stray remarks unrelated to the termination decisional process."); *Shorette v. Rite Aid of Me., Inc.*, 155 F.3d 8, 13 (1st Cir. 1998) (characterizing a question from the plaintiff's manager about "how old he was and when he planned to retire" as "a textbook example of an isolated remark which demonstrates nothing" in terms of age-based animus); *see also Doucette v. Morrison Cty., Minn.*, 763 F.3d 978, 986 (8th Cir. 2014) ("[A]sking a question about someone's retirement plans is not inherently discriminatory."); *Lefevers v. GAF Fiberglass Corp.*, 667 F.3d 721, 724 (6th Cir. 2012) ("[Q]uestions concerning an employee's retirement plans do not alone constitute direct evidence of age discrimination."). The complaint does not allege any other overt statements related to Pelletier's age. With respect to age discrimination, therefore, Pelletier has not met the pleader's burden of stating a claim to relief that is plausible, rather than merely possible. *See In re Curran*, 855 F.3d 19, 27 (B.A.P. 1st Cir. 2017). "The plausibility requirement demands something more than facts showing that a claim is conceivable." *Id.*

I therefore conclude that the complaint does not state a claim for age discrimination (Count 5).

### 3. Privacy Act and NO FEAR Act

The complaint briefly mentions alleged violations of both the Privacy Act, 5 U.S.C.A. § 552a (West 2019), and the NO FEAR Act, Pub. L. No. 107-174, 116 Stat. 566 (2002). The Postmaster General challenges those claims to the extent the complaint asserts them. Pelletier has clarified that she is not asserting claims under either Act. Therefore, the Postmaster General's request for judgment on those claims is moot.

## III. CONCLUSION

For the reasons stated above, it is **ORDERED** that (1) the United States Postal Service is dismissed as a defendant; and (2) the Defendants' motion for partial judgment on the pleadings (ECF No. 10) is **GRANTED IN PART** as to Count 5 of the Complaint. Judgment in favor of the Postmaster General shall therefore be entered on Count 5 and the Defendants' motion is **DENIED** in all other respects.

**SO ORDERED.**

**Dated this 28th day of February, 2019.**

/s/ JON D. LEVY
**CHIEF U.S. DISTRICT JUDGE**
